THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE 
 CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 
 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
John David Lee and Kathleen Newman Lee,       
Respondents/Appellants,
 
 
 

v.

 
 
 
Robert Allen Bunch,       
Appellant/Respondent.
 
 
 

Appeal From Orangeburg County
James C. Williams, Jr., Circuit Court 
 Judge

Unpublished Opinion No. 2004-UP-550
Heard September 15, 2004  Filed October 27, 2004

REVERSED AND REMANDED

 
 
 
Donnell G. Jennings and R. Hawthorne Barrett, both of Columbia, 
 for Appellant-Respondent.
Stephen B. Samuels and Joseph R. Dasta, both of Lexington, 
 for Respondents-Appellants.
 
 
 

PER CURIAM:  This action arises from a traffic 
 accident involving John David Lee (Lee) and Robert Allen Bunch.  Lee, his wife 
 Kathleen Newman Lee (Mrs. Lee), and Bunch appeal, challenging various rulings 
 of the trial court.  We reverse and remand for a new trial.
FACTS
The traffic accident between Lee and Bunch 
 occurred on September 19, 1997, at approximately 10:30 p.m. While riding his 
 motorcycle on Old Dunbar Road, Lee collided with a Cadillac El Dorado driven 
 by Bunch.  Lees motorcycle hit the drivers side of the Cadillac, which was 
 situated perpendicularly across the road.  Bunch was uninjured by the accident 
 and exited the vehicle through the passenger-side door.  Lee, however, was seriously 
 injured.
At trial, the parties presented contradictory accounts 
 of how the accident happened. Bunch testified that on the evening of the accident, 
 his then-fiancée, Joanne Hankinson, called him at his sisters house and asked 
 him to bring her dinner and a tube of lip-stick to the bar where she worked, 
 Johnny Bs.  Bunch borrowed his sisters Cadillac, purchased the lipstick at 
 a grocery store near the bar, and proceeded down Old Dunbar Road to the bar.  
 He stated he was attempting to make a wide left turn into the parking lot of 
 Johnny Bs when Lees motorcycle collided with the car.  In his deposition, 
 Bunch testified that it was still daylight when the accident occurred.  At trial, 
 he vacillated on the time from when he borrowed the Cadillac until the accident 
 occurred.  
Lee testified that he had left a family birthday 
 celebration at Murrays, a bar and grill, shortly before the accident occurred.  
 He stated that he remembered seeing a moving blur shortly before everything 
 went black but he did not remember the impact at all.  Gregory Jones and Chong 
 Abernathy, who witnessed the accident, testified about what they observed that 
 night.  Abernathy testified that when she and Jones left the bar Abernathy owned 
 between 7:00 and 7:30 that evening to go to dinner, Bunchs Cadillac was parked 
 on the shoulder of the road in front of a mailbox.  When they returned from 
 dinner several hours later, the Cadillac was still parked there.   Abernathy 
 and Jones testified the Cadillac slowly pulled into the road.  Abernathy stated 
 it appeared that the driver of the Cadillac was attempting a U-turn when the 
 accident happened.  
An ambulance arrived at approximately 
 10:45 p.m.  Though slightly disoriented, Mr. Lee was conscious and related pain 
 he felt as the emergency medical technicians (E.M.T.s) splinted his arms and 
 legs.  While the E.M.T.s were tending to Mr. Lees injuries, Trooper Paul Allen 
 Nelson of the South Carolina Highway Patrol arrived on the scene and began investigating 
 the accident by observing the condition of the vehicles, their relative positions 
 on the road, and the debris caused by the impact.  Trooper Nelson later met 
 with Lee after he had been taken by ambulance to the emergency room.  During 
 their conversation at the hospital, Trooper Nelson smelled alcohol on Lee and 
 asked whether he had been drinking prior to the accident.  Lee responded in 
 the affirmative.  Trooper Nelson arranged for a sample of Lees blood to be 
 taken by hospital personnel and tested by SLED for alcohol content.  The test 
 indicated Lee had a blood alcohol level of 0.036%.  
Lee had numerous broken bones, a head 
 injury, and severe injury to his groin area.  He spent ten days in the hospital 
 and several months recuperating while he and his family lived with his parents.  
 Because of his injuries, he was not able to return to his job performing home 
 remodeling and interior repair work with his father.  Instead, he became a licensed 
 cosmetologist and works in his mothers salon.  
On March 28, 2000, Lee and his wife, Kathleen 
 Newman Lee, brought suit against Bunch 
 [1] in the Orangeburg County Court of Common Pleas, alleging Bunch negligently 
 pulled out from a parking space into the roadway, thereby causing the accident 
 and Lees resulting injuries.  Mrs. Lee sought to recover for loss of consortium.  
 While Bunch denied all allegations of negligence in his answer, the pleading 
 contained no assertion of comparative negligence as an affirmative defense.  

Prior to trial, the Lees moved to exclude 
 any evidence of Lees consumption of alcohol before the accident.  The trial 
 court denied the motion, ruling testimony of alcohol consumption would be probative 
 as to the determination of liability.  At trial, after Lee testified, Bunch 
 moved to amend his answer to include the affirmative defense of comparative 
 negligence.  In support of the motion, Bunchs trial counsel noted that Lee 
 testified that he had consumed alcohol and testimony of other witnesses corroborated 
 the fact.  The trial court granted the motion.  
After deliberating, the jury returned a verdict 
 of comparative negligence, assigning 70% of the fault to Lee and 30% to Bunch.  
 Having found Lee more than 50% at fault, the jury awarded no damages to Lee.  
 The jury also returned a defense verdict on Mrs. Lees claim for loss of consortium.  
 Counsel for the Lees argued the verdicts were inconsistent in that Mrs. Lee 
 was entitled to recover damages on account of the jurys finding that Bunch 
 was partially negligent on Lees claim.  The judge agreed and ordered the jury 
 to resume deliberations with instructions to award some amount of damages to 
 Mrs. Lee.  After deliberating again, the jury returned with a verdict for Mrs. 
 Lee in the amount of $9,000.00.  
In a post-trial motions hearing, Lee moved for 
 judgment notwithstanding the verdict or for a new trial.  Mrs. Lee moved for 
 a new trial nisi additur or a new trial absolute.  Bunch moved for reinstatement 
 of the original defense verdict against Mrs. Lee.  By order filed September 
 24, 2002, the trial court denied each of the post-trial motions.  Bunch and 
 the Lees appealed.
LAW/ANALYSIS
 The Lees argue the trial court erred in 
 denying their motion to exclude evidence of Mr. Lees alcohol consumption before 
 the accident.  We agree.
A trial courts ruling on admission of evidence 
 will not be disturbed on appeal absent abuse of discretion amounting to error 
 of law.  Hoeffner v. The Citadel, 311 S.C. 361, 365, 429 S.E.2d 190, 
 192 (1993).  Evidence is relevant and admissible if it tends to establish or 
 make more or less probable some matter in issue.  Id. at 365, 429 S.E.2d 
 at 192.  However, otherwise relevant evidence may be excluded where its probative 
 value is substantially outweighed by the danger of unfair prejudice, confusion 
 of the issues, or misleading the jury . . . .  Kennedy v. Griffin, 
 358 S.C. 122, 127, 595 S.E.2d 248, 250 (Ct. App. 2004) (quoting Rule 403, SCRE).   
 Unfair prejudice means an undue tendency to suggest a decision on an improper 
 basis.  Id. (quoting State v. Owens, 346 S.C. 637, 666, 552 S.E.2d 
 745, 760 (2001).  
In Kennedy, this court held the trial court 
 had abused its discretion in allowing the admission into evidence of toxicology 
 results showing the presence of marijuana in the plaintiff motorists system, 
 finding the unfair prejudice outweighed the probative value of the evidence.  
 The court found the plaintiffs mere delay in applying his brakes did not necessarily 
 suggest that he was driving under an impairment.  Thus the court concluded, 
 Under these circumstances, evidence of the mere presence of marijuana, without 
 further indication of impairment, could mislead the jury.  The admission of 
 this evidence was more prejudicial than probative because there was no correlation 
 between the marijuana and the accident.  Kennedy, 358 S.C. at 128, 595 
 S.E.2d at 251.
The Lees argue that probative value of 
 the evidence of alcohol consumption was outweighed by its prejudicial effect 
 because under the driving under the influence statute, Lee, with blood alcohol 
 level of 0.036%, would be conclusively presumed to not be under the influence 
 of alcohol. [2]  Even the higher 
 alcohol levels Bunchs expert witnesses calculated Lee may have had when the 
 accident occurred [3] would not 
 have created an inference that Lee was under the influence of alcohol under 
 the statute in effect at the time of the accident. 
 [4]   
There is no evidence that Lee showed any signs of impairment.  
 Lees mother testified that when her son told her goodbye at Murrays, he appeared 
 fine and did not appear intoxicated.  There is also no evidence in the record 
 that Lee was driving erratically before the accident.  Lees sister testified 
 that when Lee was driving away from the restaurant, there was nothing unusual 
 in his driving.  Although there was some testimony the accident occurred slightly 
 left of the centerline, there is no evidence that Lee was driving across the 
 line before the accident.  
Bunchs expert witnesses both testified to the 
 general effects of the consumption of the amount of alcohol would have on a 
 person of Lees size.  Dr. Eagerton testified that the amount of alcohol he 
 calculated Lee had consumed would have impaired a persons judgment and ability 
 to multi-task, making his ability to drive impaired.  Dr. Merlin testified that 
 a person who had consumed that much alcohol would have diminished functioning, 
 such as poor judgment, inability to do some fine motor skills, and the significantly 
 diminished ability to multi-task.  However, neither of Bunchs experts testified 
 to a connection between Lees alcohol consumption and the cause of the accident.  
 They did not testify that absent the alcohol consumption, Lee would have been 
 able to avoid the accident, which happened in maybe a couple of seconds, more 
 or less, a split second according to Chong Abernathy, who witnessed the accident.  
 As she explained, I dont think the motorcycle had [any] time to avoid any 
 of the the no matter which angle, he was going to hit the Cadillac.  
Other than the experts generalizations, there is simply 
 no evidence that Lee was impaired.  Moreover, there is no evidence at all that 
 absent the consumption of alcohol, it was less probable that the accident 
 would have occurred.  
While the probative value of the alcohol consumption 
 is at best slight, the prejudicial effect of the admission of the evidence is 
 significant.  Bunchs attorney made Lees alcohol consumption the theme of his 
 opening statement, emphasizing repeatedly that this was a case about drinking 
 and driving.  We find the prejudicial effect of the admission of the evidence 
 regarding Lees alcohol consumption greatly outweighed its probative value.  
 Thus, we hold the trial court abused its discretion in allowing the admission 
 of the evidence concerning Lees alcohol consumption.  
As we hold the trial court erred in admitting the 
 evidence of Lees alcohol consumption, we need not address the parties remaining 
 issues.  Accordingly, the jurys verdict is reversed and the case remanded for 
 a new trial on the Lees claims.  
REVERSED AND REMANDED.  
HEARN, C.J., and HUFF and KITTREDGE, JJ., concur.  
 

 
 
 [1] The Lees also named Mr. Bunchs sister, Catherine Bunch Graham, who 
 owned the Cadillac, as a defendant.  She was dismissed from the suit prior 
 to trial and is not a party to this appeal.

 
 
 [2] South Carolina Code Annotated Section 56-5-2950(b)(1) (Supp. 2003), 
 provides:  If the alcohol concentration was at that time five one-hundredths 
 of one percent or less, it is conclusively presumed that the person was not 
 under the influence of alcohol.      

 
 
 [3] David Eagerton, the chief toxicologist for the South Carolina Law 
 Enforcement Division (SLED) testified that he calculated Lee had an approximate 
 alcohol level of 0.066% at the time of the accident because the sample was 
 taken at least two hours after the accident, assuming Lee was in the elimination 
 stage then.  Similarly, Dr. Stephen Merlin, the director of the chemical dependency 
 unit at Palmetto Richland Springs Hospital, testified that according to his 
 calculations, Lees blood alcohol level ranged from 0.066% to 0.096% between 
 the time of the accident and the time the sample was taken.  

 
 
 [4] The statute in effect at the time of the accident provided:  
 
 If the [alcohol] concentration 
 was at that time in excess of five one-hundredths of one percent, that fact 
 does not give rise to any inference that the person was or was not under the 
 influence of alcohol, but that fact may be considered with other evidence 
 in determining guilt or innocence of the person.  
 
 S.C. Code Ann. § 56-5-2950 
 (Supp. 2002).  This section was amended in 2003 to provide that an alcohol 
 level of eight one-hundredths or more gives rise to an inference of intoxication.  
 Act No. 61, 2003 Acts 688.